Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| JACOB MOSS,<br><br>        Plaintiff,<br><br>vs.<br><br>OUTSOURCE RECEIVABLES MANAGEMENT, JONES TOWING INC., ROBOS TOWING LLC, and JANE DOE.<br><br>        Defendants. | **COMPLAINT**<br><br>*Jury Trial Demanded*<br><br>Case Number:<br>Judge: |

### JURISDICTION AND VENUE

1.    This action arises from Defendant's common law fraud and statutory violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692, *et seq.*, and the Utah Consumer Sales Practices Act (UCSPA) Utah Code Ann. § 13-11-1 *et seq.*, in their deceptive and illegal efforts to collect a consumer debt from the Plaintiff.

2.    Jurisdiction in this case is founded upon 28 U.S.C. § 1331, § 1367, and 15 U.S.C. § 1692k, which grant the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

3.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because the acts and transactions giving rise to Plaintiff's claims occurred

within this federal judicial district and because the Defendant's conduct

business and reside in the State of Utah within the meaning of 28 U.S.C. §

1391(b) and (c).

4.    This Court has personal jurisdiction over the Defendants in this case

because they have continuous and systematic contacts with the State of

Utah including, but not limited to, residing in Utah, conducting business in

Utah, regularly collecting or attempting to collect debt in Utah from Utah

consumers, regularly enforcing consumer transactions in Utah with Utah

consumers, regularly entering into agreements with Utah consumers,

regularly contacting and communicating with consumers in Utah by

telephone, email, Internet communications, and other instruments of

interstate commerce, and by availing themselves of the benefits of the

Utah legal and judicial systems.

## PARTIES

5.    The Plaintiff Jacob Moss is a natural person who resides in Utah. Plaintiff

is a "consumer" as defined by Utah Code Ann. § 13-11-3(5) and was

directly harmed by the Defendants' conduct and violations complained of

herein.

6.    Defendant Outsource Receivables Management (Outsource) is a debt

collection agency located at 1349 Washington Blvd, Ogden, Utah 84404

that regularly collects and attempts to collect debts in Utah, from Utah

consumers, and from the Plaintiff in particular.

7.     Defendant Robo's Towing LLC is a towing company incorporated in Utah located at 1750 West 1350 South, Slaterville, Utah 84401 that regularly tows and stores vehicles in Utah.

8.     Defendant Jones Towing Inc., is a towing company incorporated in Utah located at 1726 West 1350 South, Slaterville, Utah 84404 that regularly tows and stores vehicles in Utah.

9.     Defendant Jane Doe is a person whose name is not yet known. Doe acted as an agent of at least one of the towing company Defendants and made representations on behalf of at least one of the towing company Defendants. Upon information and belief, Doe was either an owner or an employee of Jones Towing Inc.

10.    Because Outsource regularly conducts business in the State of Utah by collecting and attempting to collect past due debts from Utah consumers, it is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11.    Outsource regularly collects past due debts incurred by Utah consumers for personal, family, or household purposes and originally owed or due to another.

12.    Outsources' debt collection efforts include, *inter alia*, placing phone calls and mailing letters to Utah consumers, participating in lawsuits in Utah, communicating by telephone, email, mail, text, and other electronic means with Utah residents, soliciting, entering, and enforcing agreements with Utah consumers, and negotiating payments for consumer debts to collect past due amounts of money from Utah consumers.

13. Because Outsource solicits, enters, negotiates, and enforces consumer agreements by collecting and attempting to collect debts in connection with consumer agreements, It is a "person" as defined in Utah Code Ann. § 13-11-3(5), and a "supplier" as defined in Utah Code Ann. § 13-11-3(6).

14. Because the towing companies and Jane Doe solicit, enter, negotiate, and enforce consumer agreements by towing, storing, and buying vehicles and vehicle parts in connection with consumer agreements, the towing companies and Jane Doe are "persons" as defined in Utah Code Ann. § 13-11-3(5), and a "suppliers" as defined in Utah Code Ann. § 13-11-3(6).

## FACTUAL ALLEGATIONS

15. Sometime on or before May 11, 2020, Plaintiff's 2009 Kawasaki motorcycle was stolen.

16. At all times relevant to this case Plaintiff's 2009 Kawasaki motorcycle was registered and titled to Plaintiff and his wife Sarah Moss and used for Plaintiff's personal use.

17. The Ogden City Police recovered Plaintiff's stolen vehicle on May 11, 2020.

18. When they recovered Plaintiff's stolen vehicle the police had Jones Towing take it to their storage yard.

19. The police then notified Plaintiff that Jones Towing had possession of his motorcycle.

20. After contacting Jones Towing by telephone, Plaintiff's wife Sarah Moss went to Jones Towing on or around May 26, 2020 with her brother.

21.   At that time, Jane Doe, an agent of Jones Towing, told Plaintiff's wife she had to obtain an Impound Release Form from the DMV before it could release the motorcycle.

22.   Plaintiff's wife then went to the DMV and obtained the required Impound Release Form.

23.   Plaintiff's wife then went back to Jones Towing with the Impound Release Form and Jane Doe represented the fee was $300.00 for the towing and release of the vehicle.

24.   Jane Doe also represented that instead of paying the $300.00 fee Plaintiff could avoid the fee altogether by relinquishing the vehicle to the towing company.

25.   Plaintiff's wife then called Plaintiff to relay what Jane Doe told her and to discuss the matter. Together they determined that they would rather relinquish the motorcycle than pay $300.00 to take it home.

26.   The motorcycle had been crudely spray painted and crashed by the thief and therefore had little to no value at that point.

27.   Jane Doe helped Plaintiff's wife take pictures of the vehicle so Plaintiff could verify its condition in making his decision whether to relinquish the vehicle to Jones Towing.

28.   Because Plaintiff believed Doe's representations, he and his wife decided to relinquish their ownership of the motorcycle to Jones Towing.

29.   Plaintiff's wife then informed Doe of their decision and offered to sign over the title to Jones Towing.

30.     Doe declined the offer of the title but represented that a relinquishment form would be sufficient instead.

31.     Doe represented that Jones Towing would have to apply for a new title anyway so they did not need the existing title to accept relinquishment.

32.     During the discussion with Doe, Plaintiff's wife completed a relinquishment form and left the motorcycle at Jones Towing.

33.     Before Plaintiff's wife left, Doe confirmed to her that nothing more was needed to relinquish the vehicle and avoid all towing, impound, and storage fees.

34.     Because of Doe's representations, Plaintiff and his wife believed they had done everything needed to relinquish the vehicle and avoid all towing, impound, and storage fees.

35.     Approximately a year later Outsource Receivables Management (Outsource) called Plaintiff and demanded payment of more than $13,000.00 on behalf of Robo's Towing.

36.     Sometime in 2021 Outsource received an assignment of the alleged debt from one of the Defendants for collection purposes.

37.     The alleged debt was for towing and storage fees for recovering and storing Plaintiff's motorcycle.

38.     Such towing and storage fees are personal, family, or household purposes and therefore the alleged debt is a "debt" as defined by 15 U.S.C. § 1692a(5).

39.     The alleged debt is also a "consumer transaction" as defined by Utah Code Ann. § 13-11-3(2).

40.    During its call with the Plaintiff, Outsource identified the original creditor as Robo's Towing.

41.    Outsource also represented that the alleged debt for which it was demanding payment was for towing and storage fees for the vehicle Plaintiff relinquished.

42.    Outsource never sent Plaintiff the validation notice required by 15 U.S.C. § 1692g.

43.    Confused and upset by the situation, Plaintiff requested Outsource to provide him documentation of the alleged debt.

44.    Plaintiff also sent Outsource a letter requesting verification of the alleged debt on or around May 19, 2021.

45.    On or around May 19, 2021 Plaintiff also requested verification of the alleged debt by sending a letter to Jones Towing.

46.    Jones Towing never responded to Plaintiff's request.

47.    Outsource responded to Plaintiff's request for verification by representing Plaintiff owed $13,677.40 to Robo's Towing.

48.    Attached to Outsource's verification letter was an invoice from Jones Towing showing $12,378.00 due.

49.    Attached to Outsource's verification letter was a copy of a letter from the Division of Motor Vehicles with the total amount owed of $13,409.49.

50.    Outsource's verification letter represented the debt was owed to Robo's Towing even though all the documents attached to Outsource's verification letter indicated it was Jones Towing that towed and stored the vehicle.

51.     Nothing attached to Outsource's verification letter indicated that Robo's Towing was involved in the towing or storage of Plaintiff's vehicle.

52.     Nothing in Outsource's verification letter explained why the amount of the alleged debt demanded was $13,677.40.

53.     Even more confused and distressed by Outsource's response to his request for verification, Plaintiff sent Outsource another letter requesting Outsource to cease any further communications pertaining to the alleged debt on or around June 21, 2021.

54.     Plaintiff also requested clarification and documentation of the matter from Robo's Towing on June 22, 2021.

55.     Robo's Towing never responded to Plaintiff's letter and thus never provided any information to justify its demands for payment of $13,677.40.

56.     Upon information and belief, Outsource represented $13,677.40 was due because it or one of the other Defendants added $1,299.40 to the alleged debt for interest or collection fees.

57.     The materials attached to Outsource's verification letter indicated that the vehicle was disposed of on March 25, 2021.

58.     Other than Outsource's June 21, 2021 letter, Plaintiff did not receive notice of any sale, transfer, abandonment, dismantling, parting out, or other disposition of the vehicle.

59.     Upon information and belief the vehicle was not disposed of on March 25, 2021 but was still in Defendant's possession and control as of the filing date of this Lawsuit.

60.    The materials attached to Outsource's verification letter indicated that
Jones Towing charged Plaintiff a $35.00 "doc fee," a $166.00 towing fee,
a $17.00 call out fee, and $12,160.00 in storage fees for a total allegedly
due of $12,378.00.

61.    Upon information and belief, none of the Defendants ever actually
incurred any "doc fee" even though they charged Plaintiff for that fee.

62.    The materials attached to Outsource's verification letter also indicated that
the vehicle may have been moved to "300 Grant Ave" but the letter does
not complete that address or clarify what actually happened to the vehicle.

63.    Upon information and belief, the vehicle was not relocated but is still in
the possession of the towing Defendants.

64.    Under Utah Code Ann. § 72-9-603(17) all of the Defendants were
prohibited from charging any fees to the Plaintiff for storage of the vehicle
because the vehicle was not released to the Plaintiff.

65.    Defendants added and attempted to collect interest or collection fees to the
amounts they sought to collect from the Plaintiff.

66.    Plaintiff never agreed to pay any of the fees or interest Outsource was
attempting to collect on behalf of the tow company Defendants.

67.    Even if he had agreed to pay the fees or interest at issue, Outsource
demanded $13,677.40 which is substantially more than the amount stated
as due on the invoice.

68.    There is no contract between the parties allowing for the imposition of
interest or collection fees.

69.  Utah law does not allow Defendants to charge any interest or collection fees.

70.  Utah Admin. Code § 909-19-11 limits the maximum towing fee allowed to $166.00 per hour and the maximum storage fee allowed to $40.00 per day.

71.  By charging interest or collection fees Defendants exceeded the maximum towing fee allowed of $166.00 per hour and the maximum storage fee allowed of $40.00 per day.

72.  Upon information and belief, the actual towing fee incurred was not or should not have been $166.00.

73.  Outsource Receivables represented Plaintiff owed the alleged debt to Robo's Towing.

74.  Outsource Receivables represented the original creditor of the alleged debt was Robo's Towing.

75.  Outsource Receivables called and mailed a letter to Plaintiff to collect the alleged debt on behalf of Robo's Towing.

76.  Upon information and belief Robo's Towing was not the original creditor.

77.  In the alternative and upon information and belief, Robo's Towing and its agents engaged in or participated in the conduct at issue in this case that is attributed in this Complaint to Jones Towing or Jane Doe.

78.  Upon information and belief, the Defendants made other false, deceptive, and unfair representations, implications, demands, and threats in attempting to collect the alleged debt.

79.  Upon information and belief, the Defendants communicated with each other and with others to attempt to collect the alleged debt.

80.    Each collection letter and telephone call between Outsource and the Plaintiff is a "communication" as defined in 15 U.S.C. § 1692a(2).

81.    Outsource's collection letters and phone calls were made for the purpose of facilitating collection of the alleged debt from the Plaintiff.

82.    Each collection letter and telephone call by Outsource to the Plaintiff is an act or practice taken in connection with a "consumer transaction" as defined in Utah Code Ann. § 13-11-3(2) because those communications were consumers transactions and made in connection with the consumer transaction that created the alleged debt.

83.    Each collection letter and telephone call by Outsource to the Plaintiff is an act or practice taken in connection with a "consumer transaction" as defined in Utah Code Ann. § 13-11-3(2) because those communications were attempts to enforce performance of the consumer transaction that created the alleged debt.

84.    Upon information and belief, Outsource and the other Defendants acted within the course and scope of the authority granted to each other and in furtherance of each other's efforts to collect the alleged debt from the Plaintiff.

85.    Upon information and belief, none of the Defendants ever exceeded or breached the authority granted to each other and in furtherance of each other's efforts to collect the alleged debt from the Plaintiff.

86.    The representations, implications, demands, threats, conduct, actions, or omissions of each Defendant in attempting to collect the alleged debt were adopted, ratified, and acted upon by the other Defendants as if the

representations, implications, demands, threats, conduct, actions, or omissions were their own.

87.   None of the Defendants ever repudiated or renounced the others' representations, implications, demands, threats, conduct, actions, or omissions in attempting to collect the aged debt from the Plaintiff.

88.   The representations, implications, demands, threats, conduct, actions, and omissions by which the Defendants collected the alleged debt caused Plaintiff damages as described herein and were violations of numerous and multiple provisions of the FDCPA, including, but not limited to; 1692d, 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, 1692f(1), and 1692g amongst others.

89.   Defendants' representations, implications, demands, threats, conduct, actions, or omissions pertaining to the alleged debt, enforcement of agreements, and entering into agreements, were consumer transactions, enforcement of consumer transactions, or otherwise occurred in connection with the consumer transactions that created the debt.

90.   The representations, implications, demands, threats, conduct, actions, or omissions by which Defendants conducted business, enforced the alleged debt, and attempted to collect the alleged debt caused Plaintiff damages as described herein and violated Utah Code Ann. §§ 13-11-4 and 13-11-5 which prohibit deceptive or unconscionable acts or practices in connection with a consumer transaction.

91.   Plaintiff suffered concrete and actual personal injury damages as a result of Defendants' deceptive, unfair, unlawful, and fraudulent representations,

implications, demands, threats, actions, omissions, and communications to collect the alleged debt. Those damages include, *inter alia*; emotional distress, humiliation, stress, anxiety, frustration, confusion, headaches, sleeplessness, stomach discomfort, pain, irritability, and other personal injury.

92.    Prior to the preparation of this Complaint Plaintiff also incurred at least $2,800.00 in attorney's fees and mailing costs as a result of Defendants' fraudulent, deceptive, unfair, and unlawful attempts to collect the debt from the Plaintiff. Plaintiff also incurred additional attorney's fees and costs as a result of preparing and filing this Complaint.

93.    Defendants were negligent, or in the alternative, reckless, in their conduct and, upon information and belief, took no action whatsoever to minimize or avoid the damages they caused.

94.    Defendants had a duty to make representations that were true and accurate but negligently, or in the alternative, intentionally or recklessly breached those duties.

95.    Defendants had a duty to collect only those amounts agreed to by the Plaintiff or otherwise provide by law but negligently, or in the alternative, intentionally or recklessly breached those duties.

96.    Defendants had a duty to adhere to the requirements and refrain from violating the prohibitions provided for by federal and state law but Defendants negligently, or in the alternative, intentionally or recklessly breached that duty.

97.    Upon information and belief, Plaintiff's damages as discussed herein were also the direct and proximate result of Defendants' willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff as discussed herein.

COUNT I
**Fraud**

98.    Plaintiff hereby incorporates all other allegations set forth in this Complaint.

99.    The towing and storage fees owed when Plaintiff attempted to retrieve his vehicle were a total of $218.00.

100.    Even though the actual fees totaled only $218.00, Jane Doe represented on behalf of Jones Towing or Robo's Towing that Plaintiff owed $300.00 to retrieve his vehicle.

101.    Doe's representations discussed previously on behalf of Jones Towing or Robo's Towing pertaining to how Plaintiff could relinquish the vehicle and avoid the fees were also false.

102.    Upon information and belief, Doe intended to charge Plaintiff $40.00 per day in storage fees plus the initial towing fees when she represented Plaintiff could avoid all fees by relinquishing the vehicle.

103.    Upon information and belief, when Doe represented on behalf of Jones Towing or Robo's Towing that Plaintiff could relinquish the vehicle Doe and the towing Defendants had no intention of honoring that

relinquishment but instead intended to continue accruing storage fees and interest.

104. Even if Plaintiff had not relinquished the vehicle to the towing Defendants and Doe, they could have sold the vehicle after holding it for 30 days.

105. Rather than sell the vehicle after 30 days the towing Defendants and Doe continued storing and holding the vehicle to increase the daily storage fees.

106. Upon information and belief, when Doe represented Plaintiff could relinquish the vehicle, Doe and the towing Defendants intended to hold the vehicle without selling it so they could increase the daily storage fees to collect from Plaintiff.

107. Jane Doe made each of her false and fraudulent representations on behalf of the towing Defendants.

108. At all times relevant to this case Doe had express and implied authority to make her representations on behalf of the towing Defendants.

109. At the time of each of her representations Jane Doe and the towing Defendants knew her representations were false.

110. Doe and the towing Defendants knew the amount due and needed to retrieve the vehicle was $218.00 rather than $300.00.

111. Even if Plaintiff owed any storage fees, Doe and the towing Defendants could have sold Plaintiff's vehicle after 30 days but instead intentionally waited for approximately a year to dispose of the vehicle to increase those fees needlessly.

112.    Doe and the towing Defendants could have substantially reduced the amounts they attempted to collect from the Plaintiff if they had simply disposed of the vehicle in a timely manner.

113.    Upon information and belief, Doe and the towing Defendants have held other vehicles and charged consumers for storage fees after leading the consumer to believe they were relinquishing their ownership in the same manner as they did in this case.

114.    Plaintiff believed and relied on each of Doe's representation in reaching the decision to relinquish the vehicle to the towing Defendants.

115.    But for Doe's representations made on behalf of the towing Defendants, Plaintiff would have retrieved his motorcycle instead of leaving it with the towing Defendants.

116.    Doe and the towing Defendants committed fraud by representing the fee to take the vehicle out of impound was $300.00 when the amount due was actually $218.00.

117.    Doe and the towing Defendants committed fraud by representing Plaintiff could relinquish the vehicle to avoid paying the $300.00 towing and storage fees.

118.    Doe and the towing Defendants committed fraud by enticing Plaintiff to relinquish the vehicle and then charging Plaintiff to tow and store the vehicle.

119.    Plaintiff would have retrieved the vehicle to avoid the additional storage fees if Defendants had not enticed him to relinquish it.

120.    Doe and the towing Defendants committed fraud by holding the vehicle for longer than was necessary to increase the storage fees they charged to the Plaintiff.

121.    Doe and the towing Defendants committed fraud by adding interest or collection fees that resulted in exceeding the maximum daily storage amounts allowed by law.

122.    Doe and the towing Defendants committed fraud by attempting to collect a debt and amounts for the debt they knew Plaintiff did not actually owe.

123.    Doe and the towing Defendants committed fraud by sending the account for collections of $13,677.40 when they knew Plaintiff did not owe that amount.

124.    Doe and the towing Defendants committed fraud by charging a doc fee that did not actually exist.

125.    Outsource committed fraud by taking action to collect the debt knowing it was excessive, illegal, and included amounts Plaintiff did not agree to pay.

126.    Outsource committed fraud by attempting to collect a fraudulent debt.

127.    Outsource committed fraud by claiming the debt was owed to Robos Towing.

128.    All of Outsource's fraudulent conduct occurred on behalf of the towing Defendants and with the consent and acknowledgement of the towing Defendants.

129.    The representations and conduct of Defendants were intentionally and materially false.

130.    As a result of reasonable reliance on Defendants' false and fraudulent representations and conduct Plaintiff was misled, financially injured, and deprived of the benefits of the Defendants' representations.

131.    Plaintiff has been damaged in the amount to be determined by a jury for his financial damages, emotional distress damages, punitive damages, attorney's fees, court costs, and other litigation expenses from Doe and the towing Defendants jointly and severally.

132.    As a result of each of Defendants' fraudulent representations Plaintiff suffered the concrete actual damages described herein and requests this Court for an award against Doe and the towing Defendants, jointly and severally, for an award of actual and punitive damages pursuant to Utah Code Ann. §78B-8-201 in an amount to be proven at trial, and for all other relief which Plaintiff may be entitled.

## COUNT II
### Fair Debt Collection Practices Act

133.    Plaintiff hereby incorporates all other allegations set forth in this Complaint.

134.    The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[1]

---

[1] 15 U.S.C. § 1692(e)

135.    "The FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors."[2] It prohibits, and imposes strict liability and both statutory and actual damages for, a wide range of abusive and unfair practices.[3]

136.    Whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer."[4] The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action.[5] "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled."[6]

137.    The unsophisticated consumer would interpret and Plaintiff did interpret the Defendants' conduct as attempting to collect the principal amount, interest, and collection fees from him even though they knew he did not owe those amounts and never agreed to pay those amounts.

138.    Defendant Outsource Receivables added and attempted to charge Plaintiff interest or collection fees Plaintiff did not agree to pay and were not authorized by law.

139.    Defendant Outsource Receivables attempted to collect the towing and storage fees that Plaintiff did not owe.

---

[2] *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1171 (9th Cir.2006)
[3] *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)
[4] *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP*, 27 F.3d 1254, 1257 (7th Cir. 1994)
[5] *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997)
[6] *Beattie v. D.M. Collections Inc*., 754 F. Supp. 383, 392 (D. Del. 1991)

140.    In attempting to collect the towing fees, storage fees, and other amounts Outsource Receivables represented Plaintiff owed those fees plus interest or collection fees even though Plaintiff owed nothing for the alleged debt.

141.    Defendant Outsource represented the amount of the debt was $13,677.40 when Plaintiff did not owe that amount.

142.    Defendant Outsource represented the legal status of the debt was owed by the Plaintiff even though Plaintiff actually owed nothing.

143.    Defendants attempted to collect amounts that exceeded the statutory maximum amount of $40.00 per day.

144.    Defendants attempted to collect amounts Plaintiff never agreed to pay.

145.    Outsource misrepresented the amount, character, and legal status of the alleged debt by sending a verification letter that misstated the identity of the original creditor and included amounts Plaintiff never owed or agreed to pay.

146.    Outsource Receivables did not send Plaintiff the letter required by 15 U.S.C. § 1692g within five days after its initial communication with Plaintiff.

147.    Outsource Receivables never sent Plaintiff the letter required by 15 U.S.C. § 1692g.

148.    The representations Defendants made were fraudulent, false, deceptive, unfair, and misleading and were made for the purpose of convincing Plaintiff to paying a debt he did not owe and amounts he never agreed to pay.

149.    Plaintiff was confused and intimidated by Defendants' fraudulent, false, misleading, deceptive, and unfair representations, threats, and implications.

150.    An unsophisticated consumer would be confused and intimidated by Defendants' fraudulent, false, misleading, deceptive, and unfair representations, threats, and implications.

151.    Outsource violated the FDCPA by attempting to collect a fraudulent debt and taking other actions that constitute fraud as discussed above.

152.    Each of the violations of the Utah Consumer Sales Practices Act as discussed herein also violated the FDCPA.

153.    In connection with the collection of the alleged debt, Outsource Receivables' representations, implications, demands, threats, actions, omissions, and communications as discussed herein constitute numerous and multiple violations of the FDCPA against the Plaintiff including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*

154.    As a result of the Outsource Receivables' violations of the FDCPA as discussed herein, Plaintiff suffered concrete actual damages as described herein and is entitled to an award against Outsource Receivables for causing those damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2); and attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT III
### Utah Consumer Sales Practices Act

155.  Plaintiff hereby incorporates all other allegations set forth herein.

156.  The Utah Consumer Sales Practices Act was enacted to "protect consumers from suppliers who commit deceptive and unconscionable sales practices" and to "recognize and protect suppliers who in good faith comply with the provisions of this act."[7]

157.  Under its plain language the UCSPA "shall be construed liberally" to promote those policies.[8]

158.  The UCSPA protects consumers from deceptive acts or practices whether they occur before, during, or after the consumer transaction.[9]

159.  Defendants contacted Plaintiff to collect the alleged debt from him even though they knew or should have known he did not owe that debt.

160.  By attempting to collect the alleged debt, Defendants knowingly and intentionally represented Plaintiff agreed to pay it even though he did not.

161.  Defendants knowingly and intentionally represented that Plaintiff owed the alleged debt including the principal amount, interest, and collection fees even though he did not.

162.  Defendants knowingly and intentionally attempted to collect the principal amount, interest, and collection fees from the Plaintiff even though he did not owe the alleged debt and never agreed to pay the alleged debt.

---

[7] Utah Code Ann. § 13-11-2
[8] *Id.*
[9] Utah Code Ann. 13-11-4(1)

163.    Defendants knowingly and intentionally attempted to collect amounts that exceeded the statutory maximum amount of $40.00 per day.

164.    Defendants knowingly and intentionally represented they were authorized by the State of Utah to collect amounts that exceeded the statutory limit of $40.00 per day.

165.    The Defendants operated in concert to collect amounts Plaintiff never agreed to pay and was not required to pay.

166.    Defendants operated in concert with each other to collect amounts that were prohibited by law.

167.    At all times relevant to this case Defendants each knew or should have known Plaintiff relinquished the vehicle.

168.    At all times relevant to this case Defendants each knew or should have known the maximum storage fee allowed by law was $40.00 per day.

169.    At all times relevant to this case Defendants each knew or should have known there was no contract or statute that allowed the imposition of interest or collection fees on the alleged debt.

170.    By knowingly or intentionally engaging in the conduct described herein, each of the Defendants violated the Utah Consumer Sales Practices Act.

171.    Each of the violations of the FDCPA and other fraudulent conduct alleged herein also violated the Utah Consumer Sales Practices Act.

172.    Defendants' conduct described herein was willful and malicious, intentionally fraudulent, or manifested a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff.

173.    Defendants knew or should have known their conduct was unlawful, deceptive, and malicious.

174.    By engaging in the conduct described herein, the Defendants exercised a gross inequality of bargaining power and attempted to deprive Plaintiff of any meaningful choice.

175.    No decent, fair-minded person would view the Defendants' conduct, or the lack of any meaningful choice that conduct created, without being possessed of a profound sense of injustice.

176.    Defendants' conduct and representations violated Utah Code Ann. §§ 13-11-4 and 13-11-5 as their conduct and representations were intentionally deceptive and false.

177.    As a result of each of Defendants' violations of the UCSPA, Plaintiff suffered the concrete actual damages described herein and requests this Court for an award against Defendants, jointly and severally, for an award of actual and punitive damages in an amount to be proven at trial, and for all other relief which Plaintiff may be entitled pursuant to Utah Code Ann. § 13-11-1 *et seq*. and Utah Code Ann. §78B-8-201.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment against Defendants jointly and severally as follows:

1.    For an award of actual and statutory damages in an amount to be determined by the jury;

2.      For an award of punitive damages in an amount to be determined by the jury;

3.      For an award of Plaintiff's attorney's fees and costs reasonably incurred in this action;

4.      For pre-judgment and post judgment interest at the legal rates;

5.      For appropriate injunctive relief;

6.      For leave to amend this Complaint as the interests of justice may allow; and

7.      For such other and further additional relief as may be determined to be appropriate and as the Court may find just, equitable, and proper.

JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.


DATED 9/2/2021                                    Eric Stephenson
                                                  *Attorney for the Plaintiff*